No. 08-55281

---

*In the*

# United States Court of Appeals
*For the*
# Ninth Circuit

---

UPS SUPPLY CHAIN SOLUTIONS, INC., a corporation f/k/a
MENLO WORLDWIDE FORWARDING, INC.,
Defendant/Third-Party Plaintiff/Appellant

vs.

QANTAS AIRWAYS LIMITED,
Third-Party Defendant/Appellee.

---

On Appeal from the United States District Court
for the Central District of California
Case No. CV 06-07267 DSF (Ex)

---

**BRIEF OF AMICUS CURIAE PAUL STEPHEN DEMPSEY IN SUPPORT
OF APPELLEE QANTAS AIRWAYS LIMITED AND SUPPORTING
AFFIRMANCE OF DISTRICT COURT'S DECISION**

---

ROBERT A. REES
REES LAW FIRM PC
1925 Century Park East
Suite 2000
Los Angeles, California 90067
Telephone: (310) 277-7071

Attorney for Amicus Curiae
PAUL STEPHEN DEMPSEY

## DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, amicus curiae Paul Stephen Dempsey states that he is an individual and has no parent company or outstanding shares of stock in any party to this proceeding.

**INTEREST OF AMICUS CURIAE PAUL STEPHEN DEMPSEY**

As a practitioner, an academic, and a scholar in the area of aviation law for over thirty-five years, Paul Stephen Dempsey is interested in ensuring that the Montreal Convention is not interpreted in a non-uniform manner not intended by its drafters, or the States Parties to the Convention. I have taught Transportation Law in the United States and Canada for more than thirty years.

# TABLE OF CONTENTS

<u>Page</u>

CORPORATE DISCLOSURE STATEMENT .........................................................i

INTEREST OF AMICUS CURIAE PAUL STEPHEN DEMPSEY ...................... ii

TABLE OF CONTENTS.......................................................................... iii

TABLE OF AUTHORITIES ...............................................................iv-ix

BRIEF STATEMENT OF CASE ...............................................................1

ISSUES PRESENTED FOR REVIEW ......................................................2

STANDARD OF REVIEW .......................................................................3

ARGUMENT ...........................................................................................4

    I.    ARTICLE 35 OF THE MONTREAL CONVENTION IS
        APPLICABLE TO INDEMNITY ACTIONS BROUGHT BY
        DEFENDANTS AGAINST THIRD-PARTY AIR CARRIERS..........4

    II.    PRECEDENT INTERPRETING ARTICLE 29 OF THE WARSAW
        CONVENTION CAN AND SHOULD BE USED IN THE
        INTERPRETATION OF ARTICLE 35 OF THE MONTREAL
        CONVENTION.....................................................................8

    III.    THE RELEVANT PRECEDENT UNDER ARTICLE 29 OF THE
        WARSAW CONVENTION HOLDS THAT THIRD-PARTY
        CLAIMS BROUGHT BEYOND THE TWO-YEAR LIMITATIONS
        PERIOD ARE BARRED ...................................................16

    IV.    THE ADDITION OF CHAPTER 5 TO THE MONTREAL
        CONVENTION DOES NOT AFFECT THE COURT'S
        INTERPRETATION OF A DEFENDANT'S ABILITY TO BRING
        THIRD-PARTY INDEMNITY ACTIONS UNDER THE
        MONTREAL CONVENTION ............................................22

V.     THE INTENT OF THE "CONTRACTING" STATES TO THE
       MONTREAL CONVENTION WAS TO IMPLEMENT A
       UNIFORM BODY OF LAW TO GOVERN AIR CARRIER
       LIABILITY ........................................................................................23

VI.    THE STATED GOALS OF HARMONIZATION AND
       UNIFORMITY UNDER THE MONTREAL CONVENTION LEADS
       TO THE CONCLUSION THAT ARTICLE 35 APPLIES TO THIRD-
       PARTY INDEMNITY ACTIONS BROUGHT AGAINST AIR
       CARRIERS  ........................................................................................25

VII.   THE "RIGHT OF RECOURSE" UNDER ARTICLE 37 OF THE
       MONTREAL CONVENTION IS A SUBSET OF THE "RIGHT TO
       DAMAGES" AS SET FORTH IN ARTICLE 35 OF THE
       CONVENTION AND, THEREFORE, THE TWO-YEAR
       LIMITATIONS PERIOD SET FORTH IN ARTICLE 35 APPLIES
       TO THE "RIGHT OF RECOURSE" UNDER ARTICLE 37 ............31

CONCLUSION .........................................................................................36

CERTIFICATE OF COMPLIANCE .......................................................37

STATEMENT OF RELATED CASES ....................................................38

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aikpitanhi v. Iberia Airlines of Spain*,
    553 F.Supp.2d 872 (E.D. Mich. 2008) ............................................................13

*Allianz Global Corporate & Specialty v. EMO Trans California, Inc.*
    34 Avi. Cas. (CCH) 15,274, 2010 WL 2594360 (N.D.Cal. 2010).......4, 7, 14, 16

*American Home Assurance Co. v. Kuehne & Nagle*,
    544 F.Supp.2d 261 (S.D.N.Y. 2008) ......................................................7, 15, 21

*Baah v. Virgin Atlantic Airways Ltd.*,
    473 F.Supp.2d 591 (S.D.N.Y. 2007) ................................................................13

*Best v. BWIA West Indies Airways Ltd.*,
    581 F.Supp.2d (E.D.N.Y. 2008) ......................................................................13

*Bunis v. Israir GSA, Inc.*,
    511 F.Supp.2d 319 (E.D.N.Y. 2007) ................................................................14

*Castro v. Hinson*,
    959 F.Supp. 160 (E.D.N.Y. 1997) ...................................................................17

*Chan v. Korean Airlines,*
    490 U.S. 122 (1989)........................................................................................35

*Cree v. Flores*,
    157 F.3d 762 (9th Cir. 1998) ........................................................................3, 7

*Da Rosa v. Tap Air Portugal*,
    796 F.Supp. 1508 (S.D. Fla. 1992) ...................................................................4

*Data Gen. Corp. v. Air Express Int'l Corp.*,
    676 F.Supp. 538 (S.D.N.Y. 1988) ...................................................................16

*Ehrlich v. American Airlines, Inc.*,
    360 F.3d 366 (2d Cir. 2004) ...........................................................................29

*El Al Israel Airlines, Ltd. v. Tseng*,
    525 U.S. 155, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999)...........................15, 23, 26

*Fireman's Fund Ins. v. El Al Israel Airlines, Ltd.*,
  27 Avi. Cas. (CCH) 17,938 (N.D. Ill. 2000) ........................................................4

*Fishman v. Delta Airlines, Inc.*,
  132 F.3d 138 (2d Cir. 1998) ................................................................17

*Hosaka v. United Airlines*,
  305 F.3d 989 (9th Cir. 2002) ..............................................................23

*Husmann v. Trans World Airlines, Inc.*,
  169 F.3d 1151 (8th Cir. 1999) ............................................................17

*Hutchinson v. British Airways PLC*,
  2009 WL 959542 (E.D.N.Y. April 6, 2009) ......................................14

*Igwe v. Northwest Airlines, Inc.*,
  2007 WL 43811, 2007 U.S. Dist. LEXIS 1204 (S.D.Tex. Jan. 4, 2007) ..........14

*In re Air Crash at Lexington, KY, August 27, 2006*,
  501 F.Supp.2d 902 (E.D. Ky. 2007) ..................................................13

*Jones v. USA 3000 Airlines*,
  2009 WL 330596 (E.D. Mo. 2009) ....................................................14

*Kahn v. Trans World Airlines, Inc.*,
  443 N.Y.S.2d 79 (2d Dep't. 1982).......................................................17

*Kalantar v. Lufthansa German Airlines*,
  402 F.Supp.2d. 130 (D.D.C. 2005) ....................................................14

*Kruger v. United Air Lines, Inc.*,
  2007 WL 3232443 (N.D. Cal. 2007) ..................................................14

*L.B. Smith, Inc. v. Circle Air Freight Corp.*,
  128 Misc. 2d 12, 488 N.Y.S.2d 547 (1985).......................................16

*McCaskey v. Continental Airlines, Inc.*,
  159 F.Supp.2d 562 (S.D. Tex.) ..........................................................17

*Motorola Inc. v. Future Packaging, Inc.*,
  28 Avi. Cas. (CCH) 16,312 (Cal. Sup. Ct. L.A. Cty. 2002) ...............17

*Motorola, Inc. v. MSAS Cargo International, Inc.,*
  42 F. Supp. 2d 952 (N.D. Cal. 1998) ............................................................16, 17

*Olympic Airways v. Husain,*
  540 U.S. 644 (2004) ..........................................................................................21

*Onwuteaka v. Northwest Airlines, Inc.,*
  32 Avi. Cas. (CCH) 15,159 (S.D. Texas May 10, 2007) ...................................14

*Paradis v. Ghana Airways Ltd.,*
  348 F.Supp.2d 106 (S.D.N.Y. 2006) .................................................................13

*Rafailov v. El Al Israel Airlines, Ltd.,*
  32 Avi. Cas. (CCH) 16,3722008 WL 2047610 (S.D.N.Y. 2008) .....................14

*Redl v. Northwest Airlines, Inc.,*
  28 Avi. Cas. (CCH) 15,823 (8th Cir. 2001) ......................................................17

*Seales v. Panamanian Aviation Co.,*
  33 Avi. Cas. (CCH)  17,445, 2009 U.S. Dist. LEXIS 11855, 2009 WL
  395821 (E.D.N.Y. Feb. 18, 2009) .....................................................................14

*Serrano v. American Airlines, Inc.*
  2008 WL 2117239 (C.D. Cal. 2008) .................................................................14

*Shah v. Virgin Atlantic Airways Ltd.,*
  473 F.Supp.2d 591 (S.D.N.Y. 2007) .................................................................14

*Smith v. American Airlines, Inc.,*
  2009 WL 3072449 (N.D. Cal. 2009) ...........................................................14, 23

*Sompo Japan Insurance v. Nippon Cargo Airlines,* 522 F.3rd 766 (7th Cir.
  2008) .................................................................................................................28

*Split End Ltd. v. Dimerco Express, Inc.,*
  19 Avi. Cas. (CCH) 18,364 (S.D.N.Y. 1986) ...................................................16

*Trans World Airlines, Inc. v. Franklin Mint Corp.,*
  466 U.S. 243, 104 S.Ct 1776, 80 L.Ed. 2d 273 (1984) .......................................2

*The Traveler's Indemnity Co. v. AMR Services Corp.,*
  921 F. Supp. 176 (S.D.N.Y. 1996) .....................................................................4

*Ugaz v. American Airlines, Inc.*,
  576 F.Supp.2d (S.D. FL. 2009) ........................................................................14

*United States v. Idaho*,
  210 F.3d 1067 (9th Cir. 2000) ......................................................................3, 7

*United States v. Washington*,
  157 F.3d 630 (9th Cir. 1998) ........................................................................3, 7

*Vigilant Ins. Co. v. World Courier, Inc.*,
  32 Avi. Cas. (CCH) 16,436, 2008 WL 2332343 (S.D.N.Y. 2008) ....................14

STATUTES

49 U.S.C. § 40105 (1997) ("Warsaw Convention") ..................................................2

OTHER AUTHORITIES

AMERICAN BAR ASSOCIATION, AVIATION AND SPACE LAW COMMITTEE, *The
  Montreal Convention 1999: "An Argument for Broader Recovery? A
  Response to Set the Record Straight*, CLARK, MERCER & TOMPKINS, Fall
  2010.................................................................................................................6, 10

*Aviation Liability Law*, PAUL STEPHEN DEMPSEY (Lexis Nexis 2010) ...........passim

149 Cong. Rec. S10870 (daily ed. July 31, 2003) ...................................................15

Elmar Maria Giemulla, Ronald Schmid *et al.*, eds., *Montreal Convention*,
  looseleaf (Alphen aan den Rijn, the Netherlands: Kluwer Law
  International, 2006).......................................................................................19, 34

Elmar Maria Giemulla, Ronald Schmid *et al.*, eds., *Warsaw Convention*,
  looseleaf (Kluwer Law International, Jan. 2002 Supp.) ....................................19

*International Air Carrier Liability: The Montreal Convention of 1999*,
  PAUL STEPHEN DEMPSEY & MICHAEL MILDE (McGill 2006).....................passim

Letter of Submittal of Strobe Talbott, June 23, 2000, S. Treaty Doc. No.
  106-45, 1999 WL 33292734.............................................................................23

*Liability Rules Applicable to International Air Transportation as Developed
  by the Courts in the United States; From Warsaw 1929 to Montreal
  1999*, GEORGE N. TOMPKINS, JR., Wolters Kluwer (2010)..............................5, 6

Restatement, Second, Torts, § 12A...........................................................................35

S. Exec. Rep. 108-8 (2003).....................................................................................15

SHAWCROSS AND BEAUMONT, *Air Law*, vol. 1, Sec. 1073
    (Butterworths 2007 Supp.)..................................................................20, 22, 34

No. 08-55281

---

*In the*
## United States Court of Appeals
*For the*
## Ninth Circuit

---

UPS SUPPLY CHAIN SOLUTIONS, INC., a corporation f/k/a
MENLO WORLDWIDE FORWARDING, INC.,
Defendant/Third-Party Plaintiff/Appellant

vs.

QANTAS AIRWAYS LIMITED,
Third-Party Defendant/Appellee.

---

On Appeal from the United States District Court
for the Central District of California
Case No. CV 06-07267 DSF (Ex)

---

**BRIEF OF AMICUS CURIAE PAUL STEPHEN DEMPSEY IN SUPPORT
OF APPELLEE QANTAS AIRWAYS LIMITED AND SUPPORTING
AFFIRMANCE OF DISTRICT COURT'S DECISION**

---

### BRIEF STATEMENT OF THE CASE

Amicus curiae will rely on the opening brief and the answering brief for the background facts of the case rather than reiterate them here.

- 1 -

## ISSUES PRESENTED FOR REVIEW

1. Whether Article 35 of the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45 ("Montreal Convention"), providing that "[t]he right to damages shall be extinguished if an action is not brought within a period of two years," is applicable to indemnity actions brought by defendants against third-party air carriers.

2. Article 35 is substantially identical to Article 29 of the Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 ("Warsaw Convention"). How does precedent interpreting Article 29 of the Warsaw Convention affect our interpretation of Article 35 of the Montreal Convention?

3. To the extent that such precedent is relevant, what does it say? Specifically, should we look only to American cases interpreting the Warsaw and Montreal Conventions, or is there also relevant precedent from other signatory nations?

4. The Montreal Convention differs from the Warsaw Convention in numerous respects, including the addition of Chapter 5. How do these differences affect our interpretation of a defendant's ability to bring third-party indemnity actions under the Montreal Convention?

5. In interpreting treaties (as opposed to statutes), a court must give effect to the intent of the "contracting" states., 466 U.S. 243, *Trans World Airlines, Inc. v. Franklin Mint Corp.*, 466 U.S. 243, 253 (1984). How does this principle affect our interpretation of the effect of Article 35 on the ability of a defendant to bring third-party indemnity actions?

6.     The Montreal Convention's preamble states that a goal of the Convention is the "harmonization and codification of . . . rules." How does this goal affect our interpretation of the effect of Article 35 on the ability of a defendant to bring third-party indemnity actions?

7.     Article 37 of the Montreal Convention provides that "[n]othing in this Convention shall prejudice the question whether a person liable for damage in accordance with its provisions has a right of recourse against any other person."  Is this "right of recourse" a subset of the "right to damages" in Article 35, and thus covered under that provision, or is it a right different from the "right to damages" in Article 35, and thus not covered by that provision?

## STANDARD OF REVIEW

Findings of historical facts regarding treaties are reviewed for clear error. *See United States v. Idaho*, 210 F.3d 1067, 1072 (9th Cir. 2000), *aff'd*, 533 U.S. 262 (2001); *Cree v. Flores*, 157 F.3d 762, 768 (9th Cir. 1998); *United States v. Washington*, 157 F.3d 630, 642 (9th Cir. 1998).  Here, the District Court correctly found that "it was the intent of the drafters of the language now incorporated into Article 35 to promote uniformity over individual equity."  (ER 5; CR 35)[1].  The District Court below did not "clearly err" when it found that the Appellant's interpretation of the Montreal Convention is inconsistent with the Convention's over-arching purpose of promoting uniformity and predictability.  Thus, the District Court's decision should be affirmed.

---

[1]"Clerk's Record" is abbreviated herein by the term "CR" followed by the item number of the clerk's docket sheet.  "Excerpts of Record" is abbreviated herein by the term "ER" followed by the page number in Appellant's Excerpts of Record.

**ARGUMENT**

**I**

**ARTICLE 35 OF THE MONTREAL CONVENTION IS APPLICABLE TO INDEMNITY ACTIONS BROUGHT BY DEFENDANTS AGAINST THIRD-PARTY AIR CARRIERS**

Indemnification provisions appear throughout the Warsaw and Montreal Conventions. Where one carrier in the stream of commerce commits an act giving rise to liability, and a judgment is rendered against another, the carrier paying the judgment may seek contribution or indemnification from the carrier that damaged or lost the goods.[2] In various situations, the carrier may seek indemnification against the consignor,[3] or the consignor may seek indemnification against the carrier.[4] And pursuant to Article 37, the "person liable for damage" may seek indemnification against "any other person."[5] There is no principled reason why any of these provisions should be treated differently from the perspective of the period of limitation for bringing suit under Article 35. The two U.S. courts that have addressed the issue, the District Court below and the court in *Allianz Global Corporate & Specialty v. EMO Trans California, Inc.*, 34 Avi. Cas. (CCH) 15,274, 2010 WL 2594360, (N.D. Cal. 2010)("*Allianz*"), concur that the two-year

---

[2] Montreal Convention, Art. 48. *See, e.g., Da Rosa v. Tap Air Portugal*, 796 F. Supp. 1508 at 1509 (S.D. Fla. 1992) (failure of Pan Am to properly fill out the air waybill imputed to Tap Air which accepted delivery of the goods from Pan Am); *The Traveler's Indemnity Co. v. AMR Services Corp.,* 921 F. Supp. 176 (S.D.N.Y. 1996); *Fireman's Fund Ins. v. El Al Israel Airlines, Ltd.,* 27 Avi. Cas. (CCH) 17,938 at 17,940 (N.D. Ill. 2000) (indemnification and contribution may be sought from carrier for liability incurred by consignor's subrogee).

[3] Montreal Convention, Art. 10(2), 12(3), 48.

[4] Montreal Convention, Art. 10(3).

[5] Montreal Convention, Art. 37. *See* PAUL STEPHEN DEMPSEY, *Aviation Liability Law* §§ 13.29, 13.34, 13.36, 13.40, 16.52 (Lexis Nexis 2010).

limitations period set forth in Article 35 of the Montreal Convention is applicable to third-party claims for contribution and indemnity.

In addition, Montreal Convention scholars that have addressed the issue, have agreed with the District Court, and have cited its decision with approval. One Montreal Convention scholar, George N. Tompkins, Jr., attended the Montreal Convention conference as an Observer on behalf of the International Air Transport Association[6], and has cited the District Court's decision below with approval. Mr. Tompkins states that:

> The two-year period of limitation in Article 35 of MC99 applies to third-party indemnity and contribution actions brought against the air carrier. There is nothing in the 1961 Guadalajara Convention, as incorporated in MC99, Chapter 5, that changes the absolute bar of the two-year period of limitation in Article 35 of the MC99.

*Liability Rules Applicable to International Air Transportation as Developed by the Courts in the United States; From Warsaw 1929 to Montreal 1999*, GEORGE N. TOMPKINS, JR., Wolters Kluwer (2010), p.68 (hereinafter "Tompkins"), *citing with approval Chubb Ins. Co. of Europe. S.A. v. Menlo Worldwide Forwarding, Inc*., 32 Avi. Cas. (CCH) 15,978 (C.D. Cal. 2008).

Mr. Tompkins goes on to say that:

> The provisions of Article 29 (WC29/HP55) and Article 35 (MC99) are clear. If the action for damages is not commenced within the prescribed two-year period, in accordance with the local law procedures for "commencing" an action, any action for damages governed by the Convention, whether WC29/HP55 or

---

[6] The International Air Transport Association ("IATA") is a trade association of domestic and international air carriers. IATA was organized pursuant to a Special Act of the Canadian Parliament (S.C. 1945, ch. 51 and as amended by S.C., 1974-75-75, ch. 111) and maintains its Head Office in Montreal, Quebec, Canada.

> MC99, will be dismissed. The two-year period of limitation applies to claims brought against the carrier . . . for contribution and indemnity with respect to passenger, baggage and cargo claims. . . .

*Id* at. p. 275.

Though Mr. Tompkins doesn't mention it, indemnification sought for delay also falls under the two-year period of limitations.

The views of Mr. Tompkins should be given much weight as he participated in the diplomatic conference that drafted the Montreal Convention and listened to the delegates discuss the various articles of the Montreal Convention, including Article 35.[7] Mr. Tompkins does not take issue with the decision of the District Court here. To the contrary, Mr. Tompkins cites to the District Court's decision below with approval.

Similarly, in my treatise *Aviation Liability Law*, I state that:

> [a] failure to file . . . suit within the prescribed period also extinguishes claims and cross-suits against other parties for contribution and indemnification. To hold that indemnity and contribution claims arising under the

---

[7] Mr. Tompkins was closely involved in the preliminary work on the drafting of an instrument designed to modernize and consolidate the Warsaw Convention liability regime, as well as the Conference debates, discussions and agreements that ultimately produced the Montreal Convention. AMERICAN BAR ASSOCIATION, AVIATION AND SPACE LAW COMMITTEE, *The Montreal Convention 1999: "An Argument for Broader Recovery? A Response to Set the Record Straight*, CLARK, MERCER & TOMPKINS, Fall 2010, attached hereto as Exhibit A. Mr. Tompkins was also a member of the select International Civil Aviation Organization ("ICAO") Working Group established to initially prepare a draft of an instrument to consolidate and modernize the Warsaw System that was ultimately considered at a Diplomatic Conference convened by ICAO in Montreal in May 1999. *Id*. The Conference involved three weeks of discussion, intensive debate and drafting, which Mr. Tompkins actively participated in. *Id*. Accordingly, great deference should be given to Mr. Tompkins' views.

> Warsaw Convention and the Montreal Convention were somewhat exempt from the time limitations contained therein would destroy the uniformity and predictability intended by those conventions.

*Aviation Liability Law*, Paul Stephen Dempsey, §11.23 Lexis/Nexis (2010) (hereinafter "Dempsey on Aviation Liability"), *citing* the District Court's decision with approval.

The reason that Mr. Tompkins and the court in *Allianz* agree with the District Court below is because the application of the two-year limitations period set forth in Article 35 to claims for contribution and indemnity promotes the Montreal Convention's goal of uniformity. Here, the District Court correctly found that "it was the intent of the drafters of the language now incorporated into Article 35 to promote uniformity over individual equity." (ER 5; CR 35).[8] Moreover, the purpose of a limitation period is to bring a predictable end to litigation over a dispute. The two-year limit originated in the Warsaw Convention, Article 29(1), and was repeated nearly verbatim in the Montreal Convention, Article 35(1).

In a case very similar to the case at bar, *American Home Assurance Co. v. Kuehne & Nagle*, 544 F.Supp.2d 261 (S.D.N.Y. 2008), a subrogated cargo underwriter for a shipper brought a lawsuit for cargo damage against a freight forwarder and the contract carrier, who in turn filed a third-party complaint for contribution and indemnity against the actual air carrier and the ground handling

---

[8] Findings of historical facts regarding treaties are reviewed for clear error. *See United States v. Idaho*, 210 F.3d 1067, 1072 (9th Cir. 2000), *aff'd*, 533 U.S. 262 (2001); *Cree v. Flores*, 157 F.3d 762, 768 (9th Cir. 1998); *United States v. Washington*, 157 F.3d 630, 642 (9th Cir. 1998). The District Court did not "clearly err" when it found that the Appellant's interpretation of the Montreal Convention is inconsistent with the Convention's over-arching purpose of promoting uniformity and predictability.

agent for the actual air carrier.  As in the instant case, the actual air carrier filed a motion to dismiss the freight forwarder's third-party complaint against the actual carrier for contribution and indemnity because the action was brought beyond the two-year limitations period under Article 35 of the Montreal Convention.  *Id*. at 263.  The motion to dismiss was unopposed by the freight forwarder and granted by the court.  *Id*.  The freight forwarder, Kuehne & Nagle, conceded that its third-party claim against the actual air carrier, Polar Air, was barred by the two-year limitations period under Article 35 of the Montreal Convention.  *Id*.

In light of the foregoing, the District Court did not clearly err in finding that the drafters of the Convention promoted uniformity over individual equity and, accordingly, that the two-year limitation period under Article 35 applies to third-party claims for contribution and indemnity.

## II
### PRECEDENT INTERPRETING ARTICLE 29 OF THE WARSAW CONVENTION CAN AND SHOULD BE USED IN THE INTERPRETATION OF ARTICLE 35 OF THE MONTREAL CONVENTION

Precedent interpreting Article 29 of the Warsaw Convention should be relied upon by the Court when interpreting Article 35 of the Montreal Convention.  In my most recent treatise, I observed:

> It is important to understand the Warsaw Convention of 1929, even in jurisdictions that have adopted the Montreal Convention of 1999, because many of the provisions of the Montreal Convention are nearly identical to that earlier multilateral treaty. Therefore, much of the jurisprudence interpreting the Warsaw Convention is of direct relevance to the corresponding provisions in the Montreal Convention, and, in fact, is essential to ensuring that the treaty fulfills one of its

- 8 -

principal purposes — to unify certain laws of liability in international civil aviation.

Dempsey on *Aviation Liability* § 8.7 (footnotes omitted).

I also concluded that:

> [S]ince much of the language and structure of the Convention is drawn from the Warsaw system's instruments, some principles and concepts remain unchanged. The jurisprudence interpreting the many nearly identical provisions in the Warsaw Convention can and should serve as an elucidation of what is meant by the language in the Montreal Convention of 1999. The Montreal Convention also adopted the principle of the Guadalajara Convention, and included within the scope of application the carriage performed by an actual carrier which has no contractual relation with a passenger or a consignor.

Dempsey on *Aviation Liability* § 8.60 (footnotes omitted).

Mr. Tompkins has stated:

> Article 35 of MC99 and Article 29 of the Warsaw Convention set forth the same time limit within which any legal action subject to the liability rules of the applicable Convention must be brought.

Tompkins, p. 267.

Mr. Tompkins has also opined that:

> A body of Warsaw Convention jurisprudence already established the intended meaning of the liability rules of Warsaw . . . with which the drafters, and ultimately the States Parties to MC99, were in agreement.
>
> *          *          *
>
> If there was one cardinal principle that was advocated and followed throughout the drafting of the instrument that became MC99 and at the Montreal Conference itself (10-28 May 1999), it was that **there should be no**

- 9 -

> **change** in the new Convention from the substantive wording of the existing liability rules of the 1929 Warsaw Convention, as amended by the 1955 Hague Protocol, and as further amended by the 1975 Montreal Protocol No. 4 (MP4). In addition, the 1961 Guadalajara Supplementary Convention, was incorporated *without change* in MC99, as was MP4 relating to the carriage of cargo.
>
> \*          \*          \*
>
> The only new "liability" term in MC99 is with respect to the innovative "fifth jurisdiction" in Article 33. All other liability terms in MC99 are the same as they were in Warsaw/Hague/Guadalajara/MP4. The reason for this is that the States Parties to MC99 **intended** that there should be no change or new definitions in the liability rules of MC 99 so as to preserve the 75 years of jurisprudence that had been developed by the courts in interpreting and applying the Warsaw/Hague/Guadalajara/MP4 liability rules.

AMERICAN BAR ASSOCIATION, AVIATION AND SPACE LAW COMMITTEE, *The Montreal Convention 1999: "An Argument for Broader Recovery? A Response to Set the Record Straight*, CLARK, MERCER & TOMPKINS, Fall 2010 (*emphasis in the original*) (hereinafter "CLARK, MERCER & TOMPKINS"), attached hereto as Exhibit A.

In a footnote, Mr. Tompkins adds that the Guadalajara Convention, which was included verbatim in Chapter V of the Montreal Convention, "rendered the liability rules of the Warsaw Convention/Hague Protocol applicable to the actual carrier in addition to the contracting carrier in circumstances where the actual carrier is not the 'successive carrier' within the meaning of the Warsaw Convention/Hague Protocol." *Id*. p.10, n.2. *See also,* Dempsey on *Aviation Liability* §§ 9.88 – 9.61. It would be reasonable to conclude that these liability

rules include the two-year limitations period set forth in Article 29 of the Warsaw Convention, and now Article 35 of the Montreal Convention.

Mr. Tompkins firmly took issue with the position taken by Professor McKay Cunningham that "Courts that blithely adopt Warsaw precedent adopt an outmoded analysis." Mr. Tompkins noted that it was the intent of the drafters of the Montreal Convention, as well as the States Parties to the new treaty, to follow the existing Warsaw jurisprudence when interpreting and analyzing identically worded Articles of the Montreal Convention. CLARK, MERCER & TOMPKINS, p. 10; Dempsey on *Aviation Liability* § 8.60.

Professor Cunningham attempts to view the Warsaw Convention and its precedents as outdated because the primary policy at the time the Warsaw Convention was drafted was to limit the liability of carriers to "protect the fledgling airline industry." CLARK, MERCER & TOMPKINS, p. 11 ("Cunningham Premise No. 4"), attached hereto as Exhibit A. Mr. Tompkins states that this premise "ignores or overlooks the fact that an equal motivator was the desire to create a uniform system of law that would allow passengers and shippers of cargo to bring suit in the event of passenger death or bodily injury, or baggage or cargo loss or damage." *Id*. at p. 11. Likewise, Mr. Tompkins takes issue with the notion that Warsaw precedents are inapposite in interpreting similar provisions of the Montreal Convention, because of the shift from air carrier protection to passenger protection. *Id*. Though the Montreal Convention reflected a more pro-passenger bias, expanding limits of recovery for death and bodily injury, for cargo claims, it embraced the more pro-carrier bias that emerged in MP4, as reflected, for example, in their imposition of unbreakable limits of liability. Dempsey on *Aviation Liability* § 16.191, 16.199 – 16.200. I have observed, "though the Montreal Convention expanded carrier liability for personal injury, in many ways it constricted liability for loss and damage to cargo." *Id.* at § 15.65.

- 11 -

Article 29 of the Warsaw Convention and Article 35 of the Montreal Convention are substantively identical. *Compare*, Article 29 and Article 35; *see also* Tompkins, p. 267. This was done intentionally by the drafters. As Professor Michael Milde (former Director of the Legal Bureau at ICAO,[9] the institution that drafted the Montreal Convention) and I have noted elsewhere "[i]t may be said that that the drafters anxiously cared not to deviate from earlier language for fear that the courts might interpret such changes as a license to develop new jurisprudence." *See International Air Carrier Liability: The Montreal Convention of 1999*, PAUL S. DEMPSEY AND MICHAEL MILDE, MCGILL UNIVERSITY CENTRE FOR RESEARCH IN AIR & SPACE LAW (2005) [hereinafter "Dempsey & Milde on *The Montreal Convention*"], p. 42. Such judicial creativity would adversely impact the overriding goal of private international air law – global unification and harmonization.

Professors Dempsey & Milde also stated that:

> Judicial interpretations of the provisions of the Warsaw regime are important to understanding the Montreal Convention, for its drafters tried, wherever possible, to embrace the language of the original Warsaw Convention and its various Protocols, with the purpose of not disturbing the existing jurisprudence. Had the drafters of the Montreal Convention been more creative, they would have opened the door to judicial interpretations not theretofore contemplated and more conducive to clarity and uniformity. Thus, the "common law" of Warsaw jurisprudence is vitally important to understanding the meaning of the Montreal Convention.

*Id.* at p. 7.

As Mr. Tompkins noted:

---

[9] ICAO is the United Nations institution devoted to commercial aviation – the International Civil Aviation Organization.

>The wording of Article 35 of the Montreal Convention and Article 29 of the Warsaw Convention is substantially identical. Thus, the court decisions interpreting and applying Article 29 of the Warsaw Convention will serve as valid and meaningful precedents when applying Article 35 of MC99.
>
>\*          \*          \*
>
>A third-party action brought against an air carrier outside of the two-year limitations period is time barred.
>A third-party action for indemnity/contribution against an air carrier is time barred if not brought within the two-year period of Article 29.

Tompkins, p. 270.

Courts that have addressed the issue unanimously agree that most provisions of the Montreal and Warsaw Conventions are substantially the same and, as a result, the legal precedents developed under the Warsaw Convention are applicable when interpreting similar provisions of the Montreal Convention.[10] Specifically,

---

[10] *Paradis v. Ghana Airways Ltd.*, 348 F.Supp.2d 106, 110 n. 4-5 (S.D.N.Y. 2006), *aff'd*, 194 Fed. Appx. 5 (2d Cir. 2006); *Aikpitanhi v. Iberia Airlines of Spain*, 553 F.Supp.2d 872, 875 (E.D. Mich. 2008) ("Given its recent enactment, there is a dearth of law regarding the interpretation of the Montreal Convention. Therefore, the Court looks to case law examining the nearly exact provision of the Warsaw Convention . . . ."); *Baah v. Virgin Atlantic Airways Ltd.*, 473 F. Supp. 2d 591, 596 (S.D.N.Y. 2007) ("[t]he drafters 'tried wherever possible, to embrace the language of the original Warsaw Convention and its various Protocols, with the purpose of not disrupting the existing jurisprudence. . . . Thus, the "common law" of the Warsaw jurisprudence is vitally important to understanding the meaning of the Montreal Convention.'", quoting Paul S. Dempsey & Michael Milde, *International Air Carrier Liability: The Montreal Convention of 1999* 7 (McGill 2005)); *In re Air Crash at Lexington, Ky. on August 27, 2006,* 501 F. Supp. 2d 902, 907-08 (E.D. Ky. 2007) (quoting the Article-by-Article Analysis of the Convention, 1999 WL 33292734, Article 17 comment: "It is expected that this provision will be construed consistently with the precedent developed under the Warsaw Convention

courts have relied on Warsaw Convention precedent in the context of interpreting Article 35 based on jurisprudence established under Article 29 of the Warsaw Convention. *See Allianz Global Corporate & Specialty v. EMO Trans California,*

---

and its related instruments."); *Shah v. Virgin Atlantic Airways Ltd.*, 473 F.Supp.2d 591, 596 (S.D.N.Y. 2007); *Bunis v. Israir GSA, Inc*., 511 F.Supp.2d 319, 322 n.3 (E.D.N.Y. 2007)("courts interpreting the Montreal Convention rely on cases interpreting similar or identical provisions of the Warsaw Convention."); *Best v. BWIA West Indies Airways Ltd*., 581 F.Supp.2d at 362 (E.D.N.Y. 2008); *Kalantar v. Lufthansa German Airlines*, 402 F.Supp.2d. 130, 140 n. 10 (D.D.C. 2005); *Ugaz v. American Airlines, Inc.*, 576 F.Supp.2d at 1360 (S.D. FL. 2009); *Seales v. Panamanian Aviation Co*., 33 Avi. Cas. (CCH) 17,445, 2009 U.S. Dist. LEXIS 11855, at *24 n. 8, 2009 WL 395821 (E.D.N.Y. Feb. 18, 2009); *Vigilant Ins. Co. v. World Courier, Inc.*, 32 Avi. Cas. (CCH) 16,436, 2008 WL 2332343, *4 (S.D.N.Y. 2008) ("The Montreal Convention replaced the Warsaw Convention; however, since many similar provisions remain, courts use cases interpreting the Warsaw Convention to interpret similar Montreal Convention provisions."); *Rafailov v. El Al Israel Airlines, Ltd.*, 32 Avi. Cas. (CCH) 16,3722008 WL 2047610, *2 n.2 (S.D.N.Y. 2008)("Because the Montreal Convention recently came into force, it is appropriate to rely on cases interpreting a provision of the earlier Warsaw convention, where the equivalent provision of the Montreal Convention is substantively the same."); *Onwuteaka v. Northwest Airlines, Inc*., 32 Avi. Cas. (CCH) 15,159 (S.D. Texas May 10, 2007); *Smith v. American Airlines, Inc.*, 2009 WL 3072449 (N.D. Cal. 2009) at * 2; *Hutchinson v. British Airways PLC*, 2009 WL 959542, *3 (E.D.N.Y. April 6, 2009); *Jones v. USA 3000 Airlines*, 2009 WL 330596, *2 (E.D. Mo. 2009) ("The phrase 'place of destination' is mentioned in similar vein in both the Montreal Convention and the Warsaw Convention. Thus, cases interpreting the Warsaw Convention are relevant in interpreting the Montreal Convention as well."); *Serrano v. American Airlines, Inc*. 2008 WL 2117239, 3 (C.D. Cal. 2008)("the case law developed under the Warsaw Convention is still regarded as applicable in the interpretation of equivalent language in the Montreal Convention"); *Kruger v. United Air Lines, Inc.*, 2007 WL 3232443, *3 (N.D. Cal. 2007)("where the drafters adopted the same or substantially similar language in the Montreal Convention as that of the Warsaw Convention, the court will rely upon precedent developed under the latter to interpret the former."); *Igwe v. Northwest Airlines, Inc*., 2007 WL 43811, at *3, 2007 U.S. Dist. LEXIS 1204, at *10 (S.D.Tex. Jan. 4, 2007).

*Inc.* 34 Avi. Cas. (CCH) 15,274, 2010 WL 2594360, *3 (N.D.Cal. 2010); *see also American Home Assurance Co. v. Kuehne & Nagle*, 544 F.Supp.2d 261, 262 (S.D.N.Y. 2008).

Furthermore, "[r]espect is ordinarily due the reasonable views of the Executive Branch concerning the meaning of an international treaty." *El Al Isr. Airlines, Ltd.*, 525 U.S. at 168, 119 S.Ct. 662. The Senate Foreign Relations Committee's report on the Montreal Convention, which relied upon testimony from the U.S. Department of Transportation and the U.S. Department of State, directly addressed the Montreal Convention's drafting history with respect to the continued applicability of judicial decisions interpreting the Warsaw Convention:

> In the nearly seventy years that the Warsaw Convention has been in effect, a large body of judicial precedent has been established in the United States. The negotiators of the Montreal Convention intended to preserve these precedents. According to the Executive Branch testimony, "[w]hile the Montreal Convention provides essential improvements upon the Warsaw Convention and its related protocols, efforts were made in the negotiations and drafting to retain existing language and substance of other provisions to preserve judicial precedent relating to other aspects of the Warsaw Convention, in order to avoid unnecessary litigation over issues already decided by the courts under the Warsaw Convention and its related protocols."

S. Exec. Rep. 108-8, at 3 (2003); *see also* 149 Cong. Rec. S10870 (daily ed. July 31, 2003) (statement of Sen. Biden) ("[A] large body of judicial precedents has developed during the[ ] seven decades [since the United States became a party to the Warsaw Convention.] The negotiators intended [ ], to the extent applicable, to preserve these precedents.").

Based on the foregoing, it is clear that precedent interpreting Article 29 of the Warsaw Convention should be used in the interpretation of Article 35 of the Montreal Convention; there is no good reason to reinvent the wheel.

**III**

**THE RELEVANT PRECEDENT UNDER ARTICLE 29 OF THE WARSAW CONVENTION HOLDS THAT THIRD-PARTY CLAIMS BROUGHT BEYOND THE TWO-YEAR LIMITATIONS PERIOD ARE BARRED**

As set forth above, the long-standing precedent under Article 29 of the Warsaw Convention is relevant in interpreting, and applying, Article 35 of the Montreal Convention. These cases have held that the two-year limitations period under Article 29 of the Warsaw Convention was intended to be absolute: barring any action that was not commenced within the two-year period. *See Allianz Global Corporate & Specialty v. EMO Trans California, Inc*., 34 Avi. Cas. (CCH) 15,274, 2010 WL 2594360, \*3 (N.D. Cal. 2010), *citing Motorola, Inc. v. MSAS Cargo International, Inc.,* 42 F. Supp. 2d 952, 955 (N.D. Cal. 1998). Courts have also held that the limitations period extended to third-party actions for contribution and indemnity. *Id*. at 956; *Data Gen. Corp. v. Air Express Int'l Corp.*, 676 F. Supp. 538, 540 (S.D.N.Y. 1988); *L.B. Smith, Inc. v. Circle Air Freight Corp.*, 128 Misc. 2d 12, 488 N.Y.S.2d 547, 549 (1985); *Split End Ltd. v. Dimerco Express, Inc.*, 19 Avi. Cas. (CCH) 18,364, 18,368 (S.D.N.Y. 1986) (holding that "the two-year limit barred contribution and indemnification claims by a contract carrier against (a) the actual air carrier and (b) the air carrier's ground handling agent at the destination airport.").

The two-year limitations period is regarded as a condition precedent for the bringing of an action for damages, such that if the action is not brought within the two-year period, the right to damages is forever extinguished. Tompkins, p. 267.

The two-year limitation period cannot be extended pursuant to local or national laws applicable to tolling of periods of limitation by reason of minority, incapacity, infancy, absence, ignorance or other recognized legal capacity. Tompkins, p. 271, *citing* cases. This leads to the logical conclusion that the limitations period cannot be tolled for a claim based on contribution or indemnity.

The drafters of the Warsaw Convention considered a version of Article 29 which would have permitted the tolling of the two-year limitation period pursuant to the local law of the forum court, put that proposed version was rejected. *Castro v. Hinson*, 959 F.Supp. 160, 163 (E.D.N.Y. 1997). The drafters rejected the tolling of the two-year limitations period because of the desire to remove claims subject to the provisions of the Convention from the uncertainties of local tolling law. *Kahn v. Trans World Airlines, Inc*., 443 N.Y.S.2d 79, 87 (2d Dep't. 1982), *appeal withdrawn*, 56 N.Y. 2d 593 (1982). The two-year period is not subject to equitable tolling under local law. *Redl v. Northwest Airlines, Inc*., 28 Avi. Cas. (CCH) 15,823 (8th Cir. 2001); *Husmann v. Trans World Airlines, Inc*., 169 F.3d 1151, 1154 (8th Cir. 1999); *Fishman v. Delta Airlines, Inc*., 132 F.3d 138, 144 (2d Cir. 1998); *McCaskey v. Continental Airlines, Inc*., 159 F.Supp.2d 562, 580 (S.D. Tex.) 2001). In addition, the two-year limitations period cannot be extended by local law principles of tolling or delayed accrual of the cause of action. *Motorola Inc. v. Future Packaging, Inc.*, 28 Avi. Cas. (CCH) 16,312 (Cal. Sup. Ct. L.A. Cty. 2002); *Motorola Inc. v. MSAS Cargo Int'l., Inc*., 42 F.Supp.2d 952, 955, fn. 2 (N.D. Cal. 1998).

A seminal U.K. decision on air carrier liability in the field of air cargo is *Gatewhite v. Iberia Lineas Aereas de España,* [1989] 1 All ER 944. It addressed the issue of indemnification in another of Warsaw's provisions:

> The air waybill evidences the contract of carriage entered
> into between the consignor and the carrier, and arts 5 to

11 provide the procedural requirements as to the making out and the contents of the air waybill. The only parties concerned in the production of the document are the consignor and the carrier (although one of the three original parts is to be marked 'for the consignee' and is to accompany the cargo). It may, however, be relevant to note that art 10(2) provides:

'The consignor shall indemnify the carrier against all damage suffered by him, or by any other person to whom the carrier is liable, by reason of the irregularity, incorrectness or incompleteness of the particulars and statements furnished by the consignor.'

So the convention does not in terms limit the carrier's liability, as a result of some defect in the information furnished by the consignor, to the consignee alone. Damages suffered by the owner of the goods would therefore appear to fall within the words 'any other person to whom the carrier is liable' and thus be included within the indemnity.[11]

An identical provision appears in Article 10(2) of the Montreal Convention. In Article 10(3) the carrier is obliged to indemnify the consignor against all damages it suffers by reason of the irregularity, incorrectness or incompleteness of items inserted by the carrier into the air waybill. There is no indication that indemnification actions are to be subject to different periods of limitations than other actions arising under the Convention. Further, uniformity is demanded by Article 29 of the Montreal Convention, where it provides: "In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether

---

[11] A number of British courts have addressed indemnification under the Warsaw Convention, including *Western Digital Corp. v. British Airways* [2001] 1 All ER 109, [2001] QB 733*, East West Corp. v. DKBS*, [2003] EWCA Civ 83, [2003] 2 All ER 700, [2003] 3 WLR 916, [2003] 1 All ER (Comm) 525; *Halbert v. British Airports Auth.,* (1998) Outer House Cases. A Hong Kong case also addressed indemnification under Warsaw: *Hang Seng Bank Ltd. v. Cathay Pacific Airways*, [1997] HKCU 794. None of these cases directly address the issues now before this court.

- 18 -

under this Convention or in contract or tort or otherwise, can only be brought subject to the conditions and such limitations of liability as are set out in this Convention . . . ."  A similar provision is found in Article 24 of the Warsaw Convention.

In the view of commentators from other signatory nations, the two-year limitations period set forth in Article 29 of the Warsaw Convention and Article 35 of the Montreal Convention are applicable to claims for contribution and indemnity brought against an air carrier.

The leading German commentators on the Conventions has stated that, as the wording of Article 35 of the Montreal Convention is the same as in Article 29 of the Warsaw Convention, it can be assumed that the Courts refer in Article 35 Montreal Convention cases to case law under Article 29 of the Warsaw Convention.  Montreal Convention, Elmar Maria Giemulla, Ronald Schmid *et al.*, eds., *Montreal Convention*, looseleaf (Alphen aan den Rijn, the Netherlands: Kluwer Law International, 2006) p. 35-3, para. 1.  These German commentators also note that third-party claims, such as a subrogated claim against an air carrier by the insurer of a freight forwarder, are subject to the two-year limitations period set forth in Article 29 of the Warsaw Convention.  Warsaw Convention, Elmar Maria Giemulla, Ronald Schmid *et al.*, eds., *Warsaw Convention*, looseleaf (Kluwer Law International, Jan. 2002 Supp.), Art. 29, p. 6, para. 11.  Such third-party claims are also governed by the two-year limitations period set forth in Article 35 of the Montreal Convention.  Montreal Convention, Elmar Maria Giemulla, Ronald Schmid *et al.*, eds., *Montreal Convention*, looseleaf (Alphen aan den Rijn, the Netherlands: Kluwer Law International, 2006) p. 35-7, para. 20.

One of the leading English commentators on the Montreal Convention states that:

> The rules as to limitation of actions in the Warsaw and Montreal Conventions, that is arts 29 and 35 respectively, will equally apply to actions to which the Guadalajara Convention is relevant. It is expressly provided that the two-year limit imposed . . . on actions for contributions from a carrier, applies in relation to both actual and contracting carriers.

SHAWCROSS AND BEAUMONT, Air Law, vol. 1, Sec. 1073 (Butterworths 2007 Supp.).

In light of the above, precedent interpreting Article 29 of the Warsaw Convention is relevant in interpreting Article 35 of the Montreal Conventions, and based on the relevant precedent in the United States and from Sister Signatories to the Warsaw Convention, Article 29 applies to claims for contribution and indemnity.

A Canadian Provincial judge reached a different conclusion than that advanced here in *Connaught Laboratories v. Air Canada,* 23 O.R. (2d) 176, 94 D.L.R. (3d) 586 (Ontario High Court 1997):

> I am of the opinion that the article does not apply on its own wording to the situation of the instant case. It is, as art. 29 says, "the right to damages" which "shall be extinguished" if the action is not brought within the specified two years. What right to damages could Air Canada have had before the two years expired? It had not by then suffered any. Until it has paid or been held liable to pay the plaintiff's claim it has incurred no damage and, in my view, has no right to contribution or indemnity. After it has been held liable for or has paid more than its alleged share of the joint liability imposed on it by the Warsaw principles, the right to contribution arises. At that point it can be said that Air Canada has a 'right to damages' which is capable of being extinguished. Article 29 was not intended, in my view, for the reasons I have stated, to operate, and in the factual situation here cannot be construed as operating so as to bar one carrier from

- 20 -

> requiring another carrier with whom it shares a common
> liability from bearing a proper share of responsibility for
> payment of damages to their consignor or consignee. . . .
> In short, I am of the opinion that while art. 29(1) may
> prevent passengers, consignors and consignees from
> instituting action against a carrier after the expiration of
> two years, it does not so operate in respect to claims of
> carriers between themselves.

*Id.* [citation omitted].

Had that decision been reached by a higher court, it would be entitled to greater weight. *See Olympic Airways v. Husain,* 540 U.S. 644, 655 fn. 9 (2004). Moreover, the Canadian Court's reasoning in *Connaught* conflicts with the plain meaning of Article 29(1). Article 29(1) provides that the period of limitations is triggered by one of three explicit events: (1) the date of arrival at destination; (2) the date on which the aircraft ought to have arrived; or (3) the date on which the carriage stopped. Article 29(1) does not state that the period of limitations begins to run from the date the carrier learns it has a "right to damages", though that event may trigger the statute of limitations in Ontario.

The reasoning of *Connaught* has been rejected by courts in the United States. *See e.g., American Home Assurance Co. v. Kuehne & Nagel (AG & Co.) KG*, 544 F. Supp. 2d 261, 263 (S.D.N.Y. 2008); *Royal Ins. Co. v. Emery Air Freight Corp.*, 834 F. Supp. 633, 634–635 (S.D.N.Y. 1993). Moreover, the practical reality in aviation litigation is that carriers are well educated on the provisions of Warsaw and Montreal, and typically bring suit for indemnification within the two-year period even before the primary suit has been fully adjudicated and they have been found liable.

IV

**THE ADDITION OF CHAPTER 5 TO THE MONTREAL CONVENTION DOES NOT AFFECT THE COURT'S INTERPRETATION OF A DEFENDANT'S ABILITY TO BRING THIRD-PARTY INDEMNITY ACTIONS UNDER THE MONTREAL CONVENTION**

Chapter 5 of the Montreal Convention comes from the Guadalajara Convention. Tompkins, p. 8, n.20. The main purpose of the Guadalajara Convention was to make the liability rules of the Warsaw Convention/Hague Protocol applicable to the actual carrier in addition to the contracting carrier in circumstances where the actual carrier is not a "successive carrier" within the meaning of the Warsaw Convention/Hague Protocol. *Id*. at. p. 8. There is no indication that the inclusion of the provisions of the Guadalajara Convention in Chapter 5 of the Montreal Convention was to "right the wrongs" of the Warsaw Convention.

However, Article 35 is still applicable to claims brought pursuant to these Articles adopted from the Guadalajara Convention, including Article 45. As one Montreal Convention commentator has stated:

> The rules as to limitation of actions in the Warsaw and Montreal Conventions, that is arts 29 and 35 respectively, will equally apply to actions to which the Guadalajara Convention is relevant. It is expressly provided that the two-year limit imposed . . . on actions for contributions from a carrier, applies in relation to both actual and contracting carriers.

SHAWCROSS AND BEAUMONT, Air Law, vol. 1, Sec. 1073 (Butterworths 2007 Supp.).

As noted above, Mr. Tompkins has recently stated that: **"[t]here is nothing in the 1961 Guadalajara Convention, as incorporated in MC99, Chapter 5,**

- 22 -

that changes the absolute bar of the two-year period of limitation in Article 35 of the MC99." *See* Tompkins, p. 68 (*emphasis supplied*).

If the drafters intended to exclude Chapter 5 of the Montreal Convention from the two-year limitations period under Article 35, they would have debated the issue and done so. However, there are no such discussions reflected in the drafting Minutes, and no such exception was included in the Montreal Convention.

Based on the foregoing, the addition of Chapter 5 to the Montreal Convention does not affect the Court's interpretation of a defendant's ability to bring a third-party action under the Montreal Convention.

## V
## THE INTENT OF THE "CONTRACTING" STATES TO THE MONTREAL CONVENTION WAS TO IMPLEMENT A UNIFORM BODY OF LAW TO GOVERN AIR CARRIER LIABILITY

Where the text of a treaty is ambiguous, one means of determining the shared expectations of the State signatories is to examine the Convention's purpose. *Hosaka v. United Airlines*, 305 F.3d 989 (9th Cir. 2002). Courts have acknowledged that Montreal, like Warsaw, stresses the objective of "uniformity of rules governing claims arising from international air transportation." *Smith v. American Airlines, Inc*., 2009 WL 3072449, 2 (N.D. Cal. 2009), *citing El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 169, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999); Letter of Submittal of Strobe Talbott, June 23, 2000, S. Treaty Doc. No. 106-45, 1999 WL 33292734, at *9 (hereinafter Talbott Letter).

The Delegates at the Convention from the State Parties that ultimately signed the Montreal Convention, and various organizations that were Observers at the conference, expressed a very strong expectation of uniformity of the law under the Montreal Convention:

- 23 -

- The Delegate of Spain noted that "Air law was a universal law and must be **uniform**." International Conference on Air Law, Montreal, May 10-28, 1999, ICAO Doc. 9775-DC/2, Vol. I, Minutes, 46 (*emphasis added*).

- The Observer from the European Community noted that it "was interested in achieving a **uniform** international regime." *Id.* at 47 (*emphasis added*).

- The Delegate from Japan noted that "the participants at this conference assembled themselves with firm determination, committing themselves to . . . .**harmonizing** the rules for international carriage by air . . . ." *Id.* (*emphasis added*).

- The Observer from the International Chamber of Commerce, in its function as the representative organization of the international business community since 1992, stated that its primary aim was to support a framework for airline liability which would be characterized by global **uniformity**." *Id.* at 51(*emphasis added*).

- The Delegate from Egypt noted that: "[t]hat same approach had been adopted by the Legal Committee in elaborating this draft text, despite the pronounced divergences in views, since the dire alternative would have been to destroy the very foundations of the harmonized and **unified** regime and therefore let countries apply measures unilaterally to the detriment of all concerned." *Id.* (*emphasis added*).

- The Delegate of Nigeria hoped that the "outcome of the conference, i.e., the Convention, would be one of **uniform** and fair and equal treatment to all users. . . ." *Id.* at 52 (*emphasis added*).

Thus, the contracting states to the Montreal Convention held an expectation that the Montreal Convention would embody a uniform set of rules that were consistent no matter where a claim was brought against an air carrier. Of relevance

here, the Convention explicitly leaves only the question of "the method of calculating the period" of limitations to local law. Nowhere does the Convention leave to local law the issue of indemnification, or the issue of whether certain indemnification actions can be subject to a different period of limitations than that explicitly provided for in Article 35. Allowing local law to address broader issues in the area of claims based on contribution and indemnity would defeat the expectations of uniformity of the contracting parties to the Montreal Convention. It would enable a court to carve out one set of claims for non-uniform procedural treatment. There was no recorded discussion in the diplomatic conference that drafted the Montreal Convention of any desire by any delegate to do so.

## VI
## THE STATED GOALS OF HARMONIZATION AND UNIFORMITY UNDER THE MONTREAL CONVENTION LEADS TO THE CONCLUSION THAT ARTICLE 35 APPLIES TO THIRD-PARTY INDEMNITY ACTIONS BROUGHT AGAINST AIR CARRIERS

The preamble to the Montreal Convention states that one of the goals of the Convention is to harmonize and codify certain rules governing international carriage by air. As this author has noted elsewhere:

> The Montreal Convention of 1999 includes a preamble that identifies its purposes. The harmonization of certain rules of law is reaffirmed as an important objective, as is the need to modernize and consolidate the various Warsaw instruments. The "orderly development of air transport" in accordance with the Chicago Convention is advanced as a desirable objective, an understandable addition as that Convention established ICAO, and ICAO was the body that drafted the Montreal Convention. But an additional objective was added — one not in the Warsaw Convention. The preamble to the Montreal Convention recognizes the "importance of ensuring protection of the

- 25 -

> interests of consumers . . . and the need for equitable compensation based on the principle of restitution". And, indeed, the Montreal Convention protects these interests by raising significantly the amount of compensation potentially available for death or bodily injury. But it does not go beyond Warsaw's limitation of recovery for emotional damages unassociated with bodily injury, nor does it allow for punitive damages. The preamble also recognizes the Convention's goal of achieving an "equitable balance of interests" between carriers and passengers.

Dempsey, *Aviation Liability* § 8.77.

Though the Convention advances the "interests of consumers" and "equitable compensation" by significantly expanding passenger recovery beyond that provided by its predecessor Conventions and Protocols, it constricts recovery by shippers by making liability limits unbreakable for loss, damage and delay of cargo. *Id.* §§ 16.83, 16.176, 16.197.

More important than the Preamble, the **title** of the Warsaw and Montreal Conventions explicitly elucidate their common purpose. The title of the Warsaw Convention of 1929 is, in the official French language version: *Convention pour l'unification de certaines règles relatives au transport aérien international.* The Montreal Convention of 1999 is titled: *Convention for the Unification of Certain Rules of International Carriage by Air.* Unification is the core purpose of these Conventions. *See Zicherman v. Korean Airlines*, 516 U.S. 217, 230 (1996); *El Al Israel Airlines v. Tseng*, 525 U.S. 155, 169 (1999); *Eastern Airlines v. Floyd*, 499 U.S. 530; Dempsey on *Aviation Liability* §§ 8.74 - 8.77. One of the seminal U.K. House of Lords decisions addressing the Warsaw Convention is *Sidhu v. British Airways.*[12] Lord Hope examined the purposes of the Warsaw Convention, noting with particularity that it was entitled a "Convention for the Unification of Certain Rules relating to International Carriage by Air". That title suggested two things: (1)

---

[12] [1997] 2 Lloyd's Rep. 76.

- 26 -

the intent of the Convention is to unify the rules to which it applies, and exceptions thereto are not to be allowed unless explicitly allowed by the Convention; and (2) the Convention only addresses certain specific rules, and is therefore only a partial harmonization.

Those unified "certain rules" contained in the Montreal Convention of 1999 originated in the original 1929 Warsaw Convention, the 1955 Hague Protocol Amending the Warsaw Convention, the 1961 Guadalajara Supplementary Convention, the 1975 Montreal Protocol No. 4, the 1966 Montreal Intercarrier Agreement, the 1992 Japanese Initiative, the 1995 and 1996 IATA Intercarrier Agreements, and the 1996 ATA Intercarrier Agreement.[13]

As Mr. Tompkins explained:

> The Montreal Convention of 1999 (MC99) was conceived, drafted, and adopted to replace the 1929 Warsaw Convention liability system (the Warsaw Convention) that had governed air carrier liability in international air transportation for seventy years. Prior to the adoption of MC99, the Warsaw System consisted of a series of private international law instruments and intercarrier agreements, each designed to improve upon the original liability rules of the 1929 Warsaw Convention as a result of the rapid post-World War II era growth of the aviation industry, changes in the way the industry operated and the improvement in the economies of the aviation community of nations. As a result, in 1999, the Warsaw Convention System was a myriad of separate instruments, addressing in a mosaic fashion specific provisions of the original 1929 Warsaw Convention and not all of which were applicable to all claims of damages arising during international air transportation.

---

[13] Dempsey on *Aviation Liability* § 8.26. Portions of each of these prior instruments were consolidated into the Montreal Convention of 1999. *Id.* at §§ 8.1 – 8.61. For a brief history of these different instruments, *see* Tompkins, pp. 1-15.

Tompkins, p. 16.

As Professors Dempsey and Milde put it:

> From its inception in the later 1920s, the overriding purpose of private international aviation law has been to create uniformity of law across jurisdictions – to erect, in effect, a single Codex Juris under which all disputes would be resolved uniformly no matter where they arose. A unified liability regime was indeed created by the world community in the Warsaw Convention of 1929. During the ensuing decades, efforts to update this legal regime have led to fragmentation rather than unification, with different nations adhering to different versions of the Warsaw Convention and its various reformulations, and the "private" arrangements and inconsistent interpretations. Quite recently, the question of which law to apply – an issue of tremendous importance to the resolution of aviation injury, loss and damage disputes – was anything but uniform or simple. The Montreal Convention of 1999 [MC99] substitutes, among its parties, an entirely new treaty regime for the Warsaw system of a Convention amended by numerous Protocols.

Dempsey & Milde on *The Montreal Convention* p. 1. *Sompo Japan Insurance v. Nippon Cargo Airlines*, 522 F.3rd 766, 779 (7th Cir. 2008) (the principal purposes of the Warsaw Convention were to "(1) to establish uniformity in the aviation industry regarding the procedural and substantive law applicable to claims arising out of international air travel; and (2) to limit air carriers' potential liability in the event of an accident.").

The U.S. Court of Appeals for the Second Circuit has held: The Montreal Convention was the product of efforts by the International Civil Aviation Organization ("ICAO"), a specialized agency of the United Nations, to update and "'harmonize the hodgepodge of supplementary amendments and intercarrier

- 28 -

agreements' of which the Warsaw Convention system of liability consists." *See Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004).

The drafters incorporated into the Montreal Convention the two-year limitations period of Article 29 of the Warsaw Convention (in Article 35) and the provisions of the Guadalajara Convention (in Chapter 5), without carving out an exception to the two-year limitations period for third-party claims based on contribution and indemnity. In harmonizing the previous instruments, the drafters could have very easily carved out an exception to the two-year limitation period for claims based on contribution and indemnity. The drafters did no such thing. There is but one period of limitations in the Convention, and only one – a two-year limitation set forth in Article 35, labeled "Limitation of Actions", and it runs from the date of arrival at destination, the date on which the aircraft should have arrived, or the date on which carriage stopped. It is reasonable to interpret that period of limitations as applying to *all* actions that arise under the Convention, including all indemnification actions that arise under the Convention against carriers, consignors, and against "any other person" under Article 37, "Right of Recourse against Third Parties". Moreover, the Montreal Convention is the "Convention for the Unification of *Certain* Rules for International Carriage by Air." [emphasis supplied]. The treaty explicitly identifies which rules are not unified, and are left to *lex fori.* Though harmonization and unification of aviation liability law remains an important (perhaps central) purpose of the Montreal Convention of 1999, local law is allowed in certain limited areas:

- Articles 6 and 16 — the consignor must furnish information and documents, including a document indicating the nature of the cargo, as required by local "customs, police and any other public authorities";

- Article 22(6) — in addition to the liability caps for delay, baggage and cargo, the court also may award court costs and other litigation expenses "in accordance with its own law";

- Article 28 — advance payments must be made in death or personal injury actions "if required by its national law";

- Article 29 — an action for damages can only be brought subject to the terms of the Convention "without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights";

- Article 33(4) — procedural questions "shall be governed by the law of the court seized of the case";

- Article 35(2) — "The method of calculating" the two-year period of limitations "shall be determined by the law of the court seized of the case";

- Article 45 — if an action is brought against only the actual carrier or the contracting carrier, that carrier may require the other carrier to be joined in the action, "the procedure and effects being governed by the law of the court seized of the case;" and

- Article 56 — if a State has more than a single territorial unit in which different systems of law are applicable (such as the Peoples Republic of China *vis-à-vis* Macau and Hong Kong, for example), that State may declare the Convention applicable to all or only some of its territorial units.[14]

These are the only provisions allowing the application of local law. With respect to the case at hand, the Period of Limitations provision allows local law only on the method of calculating the two-year period. Thus, it would be appropriate for the local court to apply local law on the question of what happens if the last day of the second year falls on a holiday, or what was the date of scheduled

---

[14] Similarly, the Warsaw Convention left the following issues to local law:

> Article 21 — contributory negligence ("the court may, in accordance with the provisions of its own law, exonerate the carrier wholly or partly from his liability");
>
> Article 24(2) — who may bring suit, and that person's respective rights;
>
> Article 28(2) — procedure (to be governed "by the law of the Court seised of the case");
>
> Article 29(2) — period of limitations (the two-year period to be calculated "by the law of the Court seised of the case"); and
>
> Article 25(1) — willful misconduct (to be defined "in accordance with the law of the Court seised of the case").

- 30 -

departure, when should the aircraft have arrived, or when did carriage stop. Under the doctrine of *expressio unius est exclusio alterius,* in would be inappropriate for a court to apply local law in a way that turns the two-year period of limitations into a four-year period, or subjects the period of limitation for certain indemnification actions to be triggered by events other than "the date of arrival at destination, or from the date on which the aircraft ought to have arrived, or from the date on which carriage stopped." Montreal Convention, Art. 35(1).

## VII
## THE "RIGHT OF RECOURSE" UNDER ARTICLE 37 OF THE MONTREAL CONVENTION IS A SUBSET OF THE "RIGHT TO DAMAGES" AS SET FORTH IN ARTICLE 35 OF THE CONVENTION AND, THEREFORE, THE TWO-YEAR LIMITATIONS PERIOD SET FORTH IN ARTICLE 35 APPLIES TO THE "RIGHT OF RECOURSE" UNDER ARTICLE 37

Because the liability of an air carrier is something akin to strict liability, it was important for the drafters to ensure that an air carrier retained its rights under the Convention to seek recourse against any other responsible person or entity.

Article 37 of the Montreal Convention states that:

> Nothing in this Convention shall prejudice the question whether a person liable for damage in accordance with its provisions has a right of recourse against any other person.

Montreal Convention, Art. 37.

Neither the original Warsaw Convention nor the Hague Protocol contained this provision, though indemnification was allowed in a variety of contexts. *See* Dempsey & Milde on *The Montreal Convention*, p. 227. The original Warsaw Convention allowed indemnification actions to be pursued against carriers or consignors. Guatemala City Protocol and Montreal Protocol No. 4 ("MP4") added

an Article 30A to the Warsaw Convention clarifying that the Convention did not prejudice the question of whether a person liable for damage in accordance with its provisions has the right of recourse against "any other person." *Id*. This Article 30A language was adopted verbatim in Article 37 of the Montreal Convention. *Id*. There was no change in the period of limitations, nor was the clarification of the existence of the indemnification right against persons other than carriers and consignors exempted from it.

Article 30A (now Article 37) of the MP4 was an addition to Article 30 (now Article 36) of the original Warsaw Convention. Thus, the Warsaw Convention as amended by MP4 reads as follows:

## Article 30

1. In the case of carriage to be performed by various successive carriers and falling within the definition set out in the third paragraph of Article 1, each carrier who accepts passengers, luggage or goods is subjected to the rules set out in this Convention, and is deemed to be one of the contracting parties to the contract of carriage in so far as the contract deals with that part of the carriage which is performed under his supervision.

2. In the case of carriage of this nature, the passenger or his representative can take action only against the carrier who performed the carriage during which the accident or the delay occurred, save in the case where, by express agreement, the first carrier has assumed liability for the whole journey.

3. As regards luggage or goods, the passenger or consignor will have a right of action against the first carrier, and the passenger or consignee who is entitled to delivery will have a right of action against the last carrier, and further, each may take action against the carrier who performed the carriage during which the destruction, loss, damage or delay took place. These carriers will be jointly

and severally liable to the passenger or to the consignor
or consignee.

### Article 30A

      Nothing in this Convention shall prejudice the
question whether a person liable for damage in
accordance with its provisions has a right of recourse
against any other person.

Warsaw Convention, as Amended by the Montreal Protocol No. 4, Articles 30 and
30A.

      According to the U.S. Senate notes on MP4, "Article 30A is added to make
clear that the Convention is silent to the carriers' rights of recourse under local law
against any parties who may have caused or contributed to the damages for which
the carrier is liable." U.S. Senate Notes, P. 16. Article 30A (now Article 37)
expressly guarantees that right of the air carrier against the third party tortfeasor.

      As one Montreal Convention commentator has noted:

> [Article 37] appears to be governing something which at
> first glance appears to be self evident, namely the right to
> recourse by the air carrier as against such third parties as
> have caused the damage, or that at least contributed to the
> causation of the damage. However, unlike the Warsaw
> Convention, the Montreal Convention states an objective
> liability, with the result that the air carrier is held liable
> for loss that is caused or contributed to by third parties,
> namely his "servants and agents", or an executing air
> carrier, or a third party for purposes of Article 21
> paragraph 2b. Moreover, in the case of carriage within
> successive air carriers for purposes of Article 36, the
> consignor or consignee also has the option to hold one of
> the various air carriers liable, regardless of whether that
> particular air carrier did actually cause the loss or not.
> Without the provision of Article 37 the party responsible
> for causing the loss could rely on the objective liability of
> the air carrier, and the action or omission that caused the
> loss would remain without legal consequences.

- 33 -

Montreal Convention, Elmar Maria Giemulla, Ronald Schmid *et al.*, eds., *Montreal Convention*, looseleaf (Alphen aan den Rijn, the Netherlands: Kluwer Law International, 2006) p. 37-1.

> Article 37 makes it clear, that insofar as the air carrier is entitled to any right of recourse, these are not barred by the Montreal Convention. However, Article 37 remains silent in respect of the legal basis for any recourse. Thus recourse will have to be carried out according to the applicable provisions of the conflict of law clauses and in accordance with such rules as are applicable to the relationship between the recourse creditor and the recourse debtor.

*Id.*

Another Montreal Convention commentator has stated that:

> The convention provision [Article 37] is intended to be facilitative, to remove any basis or suggestion that actions against third parties are restricted by the convention. It was argued in one United States case that the provision was restrictive, requiring an actual holding that a person was indeed liable before that person could commence a third-party or recourse action. The argument was rightly rejected. The text does not support the argument, which would require the insertion of a word like "found" or "held" before the words 'liable for damages."

SHAWCROSS, p. 461.

It is significant to note that both Article 35 and Article 37 are contained in Chapter III of the Montreal Convention, which is titled "Liability of the Carrier and Extent of Compensation for Damage," with Article 37 falling after Article 35. *See* Montreal Convention Chapter III. Thus, based on the arrangement of these Articles within the same Chapter, it is clear that the drafters intended the "right of

recourse" to be a subset of the "right to damages" in Article 35, and thus covered under that provision.

Treaties, like statutes, should be interpreted given the plain meaning of the words. *Chan v. Korean Airlines,* 490 U.S. 122 , 134 (1989); Dempsey on *Aviation Liability* § 8.67,  Here, Article 37 provides that "[n]othing in this Convention shall prejudice the question whether a person liable for damage *in accordance with its provisions* has a right of recourse against any other person." The "in accordance with its provisions" language is instructive. What the "in accordance with its provisions" language means, is that the other articles of the Convention, including Article 35, apply.

Article 35 states that the right to "damages" is extinguished if not brought within two years. Montreal Convention, Article 35. The term "damages" means a "pecuniary compensation or **indemnity**, which may be recovered in the courts . . . ." Restatement, Second, Torts, § 12A  (*emphasis added*). Thus, using the Restatement definition of "damages" to include claims based on indemnity, Article 35 would bar any such claims not brought before the expiration of the two-year period.

Based on the foregoing, the "right of recourse" under Article 37 of the Montreal Convention is a subset of the "right to damages" as set forth in Article 35 of the Convention and, therefore, the two-year limitations period set forth in Article 35 applies to the right of recourse under Article 37. There is nothing in the drafting history of the Montreal Convention that suggests otherwise.

Damage claims arising under the Convention are extinguished if not brought within two years. Where recourse is sought for a remedy other than damages, such as an injunction, one might conceivably argue that the Convention's period of limitations does not apply. I know of no case, however, in which this theoretical alternative has been raised.

- 35 -

**CONCLUSION**

For the foregoing reasons, amicus curiae respectfully submits that the Order of the District Court granting the Appellee's motion to dismiss should be affirmed in all respects.

Dated: December 8, 2010

Respectfully Submitted

By: /s/ Robert A. Rees
     ROBERT A. REES
     REES LAW FIRM PC
     1925 Century Park East
     Suite 2000
     Los Angeles, California 90067
     Telephone: (310) 277-7071

     Attorney for Amicus Curiae
     PAUL STEPHEN DEMPSEY

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, I certify that the brief of amicus curiae Paul Stephen Dempsey is proportionately spaced, has a typeface of 14 points or more and contains 8,245 words.

## STATEMENT OF RELATED CASES

Pursuant to Rule 28-2.6 of the Ninth Circuit Rules, amicus curiae Paul Stephen Dempsey states that he is aware of no related cases pending before the Court.